Slip Op. 18-125

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| NATIONAL NAIL CORP., | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before: Mark A. Barnett, Judge |
| Defendant, | Court No. 18-00053 |
| and | |
| MID CONTINENT STEEL & WIRE, INC., | |
| Defendant-Intervenor. | |

## <u>OPINION AND ORDER</u>

[Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.]

Dated:  September 24, 2018

<u>Adams C. Lee</u>, Harris Bricken McVay LLP, of Seattle, WA, argued for Plaintiff.

<u>Sosun Bae</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant.  With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Patricia M. McCarthy</u>, Assistant Director.  Of counsel on the brief was <u>David Campbell</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Adam H. Gordon</u>, The Bristol Group PLLC, of Washington DC, argued for Defendant-Intervenor.  With him on the brief were <u>Ping Gong</u> and <u>Lydia K. Childre</u>.

Barnett, Judge:  Plaintiff National Nail Corp. ("Plaintiff" or "National Nail") seeks to

challenge the U.S. Department of Commerce's ("Commerce" or the "agency") final

results in the first administrative review of the antidumping duty order covering certain

steel nails from Taiwan. *See Certain Steel Nails from Taiwan*, 83 Fed. Reg. 6,163

(Dep't Commerce Feb. 13, 2018) (final results of antidumping admin. review and partial

rescission of admin. review; 2015-2016) ("*Final Results*"); Compl., ECF No. 5.

Defendant United States ("Defendant" or the "Government") moves to dismiss National

Nail's complaint for lack of subject matter jurisdiction pursuant to United States Court of

International Trade ("USCIT") Rule 12(b)(1). Def.'s Mot. to Dismiss for Lack of Subject

Matter Jurisdiction ("Def.'s Mot."), ECF No. 18. National Nail opposes the motion. Pl.'s

Resp. to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 29. Defendant-Intervenor Mid

Continent Steel & Wire, Inc. ("Defendant-Intervenor" or "Mid Continent") supports the

motion. Def.-Int.'s Resp. in Supp. of Def.'s Mot. to Dismiss for Lack of Subject Matter

Jurisdiction ("Def.-Int.'s Resp."), ECF No. 21. For the following reasons, the court

grants Defendant's motion.

BACKGROUND

In September 2016, Commerce initiated the first administrative review of the

antidumping duty order covering certain steel nails from Taiwan. *Initiation of*

*Antidumping and Countervailing Duty Admin. Reviews*, 81 Fed. Reg. 62,720 (Dep't

Commerce Sept. 12, 2016). The review covered five companies: Romp Coil Nail

Industries Inc. ("Romp"), Hor Liang Industrial Corp. ("Hor Liang"), PT Enterprise, Inc.

("PT Enterprise"), Bonuts Hardware Logistics Co., LLC ("Bonuts"), and Unicatch

Industrial Co., Ltd. ("Unicatch"). Compl. ¶ 9. PT Enterprise, Bonuts, and Unicatch were

subject to individual examination; Romp and Hor Liang were non-examined companies.

*Id.* ¶¶ 7-11.  National Nail is a U.S. importer of steel nails from Hor Liang in Taiwan.  *Id.* ¶ 2.

On August 7, 2017, Commerce published its preliminary results.  *See Certain Steel Nails from Taiwan*, 82 Fed. Reg. 36,744 (Dep't Commerce Aug. 7, 2017) (prelim. results of antidumping duty admin. review and partial rescission of admin. review; 2015-2016) ("*Prelim. Results*").  Therein, Commerce determined that PT Enterprise and Bonuts had failed to cooperate to the best of their ability and assigned them weighted-average dumping margins equal to 78.17 percent based on facts otherwise available with an adverse inference (referred to as "adverse facts available" or "AFA").  *Prelim. Results*, 82 Fed. Reg. at 36,744; *see also* 19 U.S.C. § 1677e(b) (governing Commerce's use of adverse facts available).  Commerce preliminarily calculated a weighted-average dumping margin of 34.20 percent for Unicatch, based on the data it had submitted.  *Prelim. Results*, 82 Fed. Reg. at 36,744.  Citing to 19 U.S.C. § 1673d(c)(5)(A),[1] Commerce preliminarily assigned Unicatch's rate to Romp and Hor Liang.  *Prelim. Results*, 82 Fed. Reg. at 36,744.

---

[1] Section 1673d(c)(5)(A) states that the "all-others rate" assigned to non-examined companies is calculated as "the weighted average of the estimated weighted average dumping margins" assigned to individually-examined companies, "excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title [i.e., on the basis of adverse facts available]."  19 U.S.C. § 1673d(c)(5)(A). While this statutory provision is specific to antidumping investigations, Commerce relies on this same methodology to establish an all-others rate in administrative reviews.

After Commerce issued the preliminary results, Mid Continent filed a case brief

urging Commerce to reject Unicatch's data and, instead, assign to Unicatch a rate

based on adverse facts available.  Def.-Int.'s Resp. at 4.

On February 6, 2018, Commerce issued the *Final Results*.  *Final Results*, 83

Fed. Reg. at 6,165.[2]  Therein, Commerce determined to use adverse facts available to

determine the rate for Unicatch as well as for the other individually-examined

respondents—PT Enterprise and Bonuts —resulting in all individually examined

respondents receiving final dumping margins of 78.17 percent.  *Final Results*, 83 Fed.

Reg. at 6,164.  Citing to 19 U.S.C. § 1673d(c)(5)(B),[3] Commerce assigned Romp and

Hor Liang weighted-average dumping margins of 78.17 percent; i.e., "the rate

determined for all mandatory respondents."  *Final Results*, 83 Fed. Reg. at 6,164.[4]

National Nail did not enter an appearance or participate in any manner in the

underlying proceeding.  *See* Compl. ¶ 3.  Nevertheless, on March 15, 2018, National

---

[2] Commerce published the *Final Results* on February 13, 2018.  *See Final Results*, 83 Fed. Reg. at 6,163.

[3] Section 1673d(c)(5)(B) provides that when the dumping margins assigned to all individually-examined companies are zero, de minimis, or based on adverse facts available, Commerce "may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated."  19 U.S.C. § 1673d(c)(5)(B).  As with § 1673d(c)(5)(A), this provision is also specific to antidumping investigations; however, Commerce relies on this approach in administrative reviews.

[4] For additional explanation regarding Commerce's decision regarding the all-others rate, see Issues and Decision Mem. for Certain Steel Nails from Taiwan, A-583-854 (Feb. 6, 2018) at 5 & nn.13-14, *available at* https://enforcement.trade.gov/frn/summary/taiwan/2018-02897-1.pdf (last visited Sept. 18, 2018).

Nail initiated the instant action challenging Commerce's calculation of the all-others rate assigned to Romp and Hor Liang in the *Final Results*.  *See* Summons, ECF No. 1; Compl. ¶¶ 20-28. National Nail alleged jurisdiction pursuant to 28 U.S.C. § 1581(c) and (i) (hereinafter referred to as "(c) jurisdiction" and "(i) jurisdiction," respectively).  Compl. ¶ 1.

On April 18, 2018, the Government moved to dismiss this action for lack of jurisdiction.  *See* Def.'s Mot.  In opposing the Government's motion, National Nail presented arguments regarding the court's (i) jurisdiction, but failed to support its allegation of (c) jurisdiction.  *See* Pl.'s Opp'n at 1, 7, 11.  At oral argument, which the court heard on July 24, 2018, National Nail abandoned its allegation of (c) jurisdiction.[5] *See* Docket Entry, ECF No. 32; Oral Arg. Tr. at 106:17-20, ECF No. 33.

### SUBJECT MATTER JURISDICTION

To adjudicate a case, a court must have subject-matter jurisdiction over the claims presented.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

A plaintiff bears the burden of establishing subject-matter jurisdiction.  *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).  When, as here, the "motion challenges a complaint's allegations of jurisdiction, the factual

---

[5] Accordingly, the court does not further address this jurisdictional basis.

allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true." *Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).[6] To "resolv[e] these disputed predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings." *Id.* (internal quotation marks and citation omitted).

In this case, the Government challenges the existence of jurisdiction. *See* Def.'s Mot. Therefore, the court may consider extrinsic evidence. *Shoshone Indian Tribe*, 672 F.3d at 1030.

### DISCUSSION

Pursuant to 28 U.S.C. § 1581(i), the court possesses jurisdiction to hear "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(2). Nevertheless, § 1581(i) "shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable [] by the Court of International Trade under section 516A(a) of the Tariff Act of 1930[, as amended, 19 U.S.C. § 1516a(a)] . . . ." 28 U.S.C. § 1581(i). "Section 1581(i) embodies a 'residual' grant of jurisdiction, and may not be invoked when jurisdiction under another subsection

---

[6] In contrast, when the motion challenges the sufficiency of the pleadings, the court assumes that the allegations within the complaint are true. *H & H Wholesale Servs., Inc. v. United States*, 30 CIT 689, 691, 437 F. Supp. 2d 1335, 1339 (2006).

of § 1581 is or could have been available, unless the remedy provided under that other

subsection would be manifestly inadequate." *Sunpreme Inc. v. United States*, 892 F.3d

1186, 1191 (Fed. Cir. 2018).

The Government and Mid Continent contend that because (c) jurisdiction could

have been available to National Nail had it participated in the underlying proceeding, (i)

jurisdiction is unavailable.  Def.'s Mot. at 7; Def.-Int.'s Resp. at 8.  National Nail

contends that it had no opportunity to file written argument on the issues presented in its

complaint (in particular, Commerce's calculation of the all-others rate) because that

issue did not arise until Commerce issued the *Final Results*.  Pl.'s Opp'n at 8.

According to National Nail, because no party raised arguments regarding the calculation

of the all-others rate in the administrative case briefs, National Nail "had no opportunity

to rebut a non-existent argument on this issue." *Id.* at 9.  National Nail further contends

that because the challenged issue first arose in the *Final Results*, any remedy available

pursuant to 28 U.S.C. § 1581(c) "would have been manifestly inadequate." *Id.* at 15.  In

reply, the Government contends that National Nail misunderstands the concept of

manifest inadequacy and has not shown that the remedy provided by 28 U.S.C.

§ 1581(c) would have been manifestly inadequate.  Def.'s Reply Br. in Supp. of Mot. to

Dismiss ("Def.'s Reply") at 7, ECF No. 31.

In assessing the relevant jurisdictional basis, the court must "look to the true

nature of the action." *Sunpreme*, 892 F.3d at 1193 (quoting *Norsk Hydro Can.*, 472

F.3d at 1355) (denying (i) jurisdiction when the complaint sought the type of relief

associated with review of an adverse scope ruling under the court's (c) jurisdiction and

the plaintiff had not obtained such a scope ruling).Here, National Nail urges the court to

find that certain aspects of the *Final Results* are unsupported by substantial evidence

and otherwise not in accordance with law, and remand with instructions for Commerce

to reconsider the all-others rate.  *See* Compl. at 8-9 (prayer for relief).  This is precisely

the type of relief associated with a challenge to a determination reviewable pursuant to

19 U.S.C. § 1516a(a)(B)(iii), which is provided for in the court's (c) jurisdiction.  28

U.S.C. § 1581(c).  National Nail could have taken steps to avail itself of this remedy by

seeking to protect its rights through participation in the underlying administrative

proceeding.  *See* Def.'s Reply at 3 n.1.

It is well-settled that (i) jurisdiction is generally unavailable when (c) jurisdiction

could have been available.  *See, e.g.*, *Sunpreme*, 892 F.3d at 1191.  The only exception

is when the party asserting (i) jurisdiction is able to demonstrate that the remedy

afforded by (c) jurisdiction would be manifestly inadequate.  *See, e.g.*, *id.*  National

Nail's jurisdictional arguments, therefore, turn on its asserted inability to have raised this

issue during the underlying administrative proceeding.  Pl.'s Opp'n at 12-14; *see id.* at

12 (asserting that National Nail "*could not* have addressed the issue of whether

Commerce acted lawfully in calculating the all-others rate based on an AFA rate"

because Commerce did not calculate the all-others rate in that manner until the *Final

Results*) (emphasis added).

As set forth above, Mid Continent urged Commerce not to use Unicatch's data to

calculate its final antidumping duty margin and, instead, to assign Unicatch a margin

based on adverse facts available.  In light of the fact that the rate preliminarily assigned

to Hor Liang and Romp (and, thus, National Nail's imports) was based solely on

Unicatch's rate, National Nail could, and should, have anticipated the possibility that its

assigned rate might change in the final results and taken steps to timely protect its

interests and put the agency on notice of its status and concerns.

National Nail posits the possibility that success in appeals filed by Unicatch and

PT Enterprise regarding Commerce's use of adverse facts available may result in

Commerce recalculating those companies' rates, the benefits of which National Nail

might not be able to avail itself of absent jurisdiction over the instant appeal.  Pl.'s Opp'n

at 14.  Without opining on the scope of separate challenges to Commerce's *Final*

*Results*, the requirements for jurisdiction cannot be waived on equitable grounds.  *See*

*NEC Corp. v. United States*, 806 F.2d 247, 249 (Fed. Cir. 1986); *Brecoflex Co., L.L.C. v.*

*United States*, 23 CIT 84, 87, 44 F. Supp. 2d 225, 228 (1999).  The Federal Circuit's

"cases make clear that mere allegations of financial harm do not render a remedy

established by Congress manifestly inadequate."  *Sunpreme*, 892 F.3d at 1193 (citing

*Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006)); *see*

*also Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987).  Rather, the

predicate steps "must be an 'exercise in futility, or incapable of producing any result;

failing utterly of the desired end through intrinsic defect; useless, ineffectual, vain.'"

*Sunpreme*, 892 F.3d at 1193-94 (quoting *Hartford Fire Ins. Co. v. United States*, 544

F.3d 1289, 1294 (Fed. Cir. 2008)).  National Nail has failed to demonstrate that (c)

jurisdiction would have been manifestly inadequate.  Accordingly, the court lacks (i)

jurisdiction to hear this case.

### CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Rule 12(b)(1) motion to dismiss this action for lack of subject matter jurisdiction (ECF No. 18) is **GRANTED**.  Judgment will enter accordingly.


/s/      Mark A. Barnett____
Mark A. Barnett, Judge

Dated: <u>September 24, 2018      </u>
        New York, New York